**ROGOFF et al., Appellants,**

**v.**

**KING, Appellee.**

[Cite as *Rogoff v. King* (1993), 91 Ohio App.3d 438.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 63782.

Decided Nov. 8, 1993.

440

*Marc N. Silberman,* for appellants.

*Roy A. Hulme,* for appellee.

DONALD C. NUGENT, Judge.

This is an appeal from the decision of the Cuyahoga County Court of Common Pleas which granted the motion for summary judgment filed by defendant-appellee Steven W. King, D.D.S., on the complaint of plaintiffs-appellants Michelle B. Rogoff and Earle Rogoff.

Appellants initiated the present dental malpractice action through the filing of their complaint on February 21, 1991. Appellee duly answered. On July 1, 1991, a pretrial was set for September 13, 1991, by which time appellants were to supply an expert's report. Thereafter, on appellants' motion, the trial court extended the deadline for appellants to obtain an expert's report to October 14, 1991. Appellants' expert medical report was filed on October 15, 1991. After a pretrial held on October 17, 1991, appellants were given forty-five days to supplement their expert report. Appellee was further given until January 1, 1992 to file a dispositive motion, while appellants were given until February 1, 1992 to respond. The trial court set a final pretrial conference for March 5, 1992 and trial for April 13, 1992. Appellants filed a motion to file a supplemental expert medical report instanter on December 6, 1991, which the trial court granted. Appellee filed a motion for summary judgment, with leave of court, on January 30, 1992. Appellants filed their responsive brief, also with leave of court, on March 16, 1992.

The relevant facts are as follows:

In support of his motion for summary judgment, Dr. King averred that he had reviewed the treatment rendered to Mrs. Rogoff and that it was his opinion that "[u]nder no circumstances was there any failure on my behalf to comply with the reasonable standard of dental care involving my consultation and treatment relative to Michelle B. Rogoff." Dr. King further opined that "[i]n all respects, I have complied with the applicable standard for dentists practicing under the same or similar circumstances."

Also attached to appellee's motion for summary judgment was the following pertinent deposition testimony of Mrs. Rogoff:

"Q. Was it your perception that ever since the root canal had originally been done back in late 1987 that the treatment had not solved your problem?

"A. Absolutely.

"Q. Did you continue to have flare-ups and pain between late 1987 and when you last saw Dr. King?

"A. Yes, I did.

"Q. Did you complain to anybody about that pain?

"A. Yes, I did.

"Q. Who?

"A. Everybody.

"Q. Who is everybody?

"A. Dr. King, the girls in his office, all my friends, my family. I was really sick."

In opposition to appellee's motion for summary judgment, Michelle Rogoff averred that she was a patient of Dr. King from approximately July 1984 through September 1988. In October 1987, Mrs. Rogoff underwent root canal therapy as recommended by Dr. King. Mrs. Rogoff averred that from the time of the root canal therapy, she experienced extreme pain and suffering, causing her to make numerous visits to Dr. King's office for relief from said pain and suffering. Mrs. Rogoff further averred that during the course of her follow-up treatment from October 1987 through September 1988, Dr. King repeatedly reassured her that he could find no problem with the procedure performed, but he was puzzled as to why she was experiencing pain and felt that it would take time for her to heal and for the pain to be alleviated.

Mrs. Rogoff was advised by Dr. King that she should see an endodontist during the summer of 1988, but for financial reasons, as well as being scared, she chose not to do so. On November 24, 1989, however, Mrs. Rogoff was advised by Dr. Evan Tetelman, D.D.S., that a broken instrument was found in the tooth treated by Dr. King. Moreover, despite admitting to being "a lay person as it related to dental treatment," Mrs. Rogoff averred that it was not until November 24, 1989 that she learned of the source of "her great pain and discomfort in the tooth treated by" Dr. King.

In their brief in opposition to appellee's motion for summary judgment and before this court, appellants rely on the "expert medical report" and "supplemen-

tal expert medical report" of Dr. Ned Robertson, D.D.S., previously filed with the trial court. In Dr. Robertson's "expert medical report," he writes:

"As I understood the accepted standards of my profession, *there are five possible causes for concern* here regarding tooth # 19, each of which I would like to address. First, Sargenti paste was allegedly used. Second, the tooth was filled initially while the patient still experienced pain. Third, an instrument was broken off in one of the canals and the patient was not informed right away. Fourth, a temporary crown was apparently not placed to prevent tooth fracture, and no crown was recommended to the patient as the final treatment for this tooth. Finally, antibiotics could possibly have been used earlier to help clear up what may have been a periapical abscess.

" * * *

"In conclusion, *although there may have been several breaches of the standards of dental care, I cannot say with certainty which, if any of these resulted in the prolonged pain experienced by the patient or the eventual loss of the tooth.* Any one of the first four could have done so." (Emphasis added.)

In Dr. Robertson's "supplemental expert medical report," Dr. Robertson writes:

"You have requested clarification regarding my report of 14 October 1991 (Rogoff v. King). Specifically, do I feel the standards of care *may have been violated in this case* by Dr. King, and *could this have resulted in the pain and/or subsequent loss of the tooth?* The answer would be 'yes.' The written records and the patient's testimony both *suggest* this." (Emphasis added.)

Based on the foregoing, the trial court granted appellee's motion for summary judgment. Appellants timely appeal, raising the following assignments of error for our review:

"I. The trial court erred in granting defendant-appellee's motion for summary judgment where numerous issues of material fact existed and defendant-appellee was not entitled to judgment as a matter of law.

"II. The trial court failed to render a legally sufficient judgment pursuant to Ohio Civil Rule 54(A) which has placed an undue burden on plaintiff-appellants to prosecute this appeal."

I

In appellants' first assignment of error, appellants argue: (1) that by filing expert medical reports, an affidavit and a transcript of Mrs. Rogoff's deposition testimony, appellants met the requirements of Civ.R. 56(E) in responding to appellee's motion for summary judgment; (2) that summary judgment should not

have been granted because appellants raised numerous issues of material fact, as well as called into question the credibility of Dr. King; and that (3) the trial court prematurely considered appellee's motion for summary judgment. Appellants' arguments lack merit.

A court reviewing the granting of a summary judgment must follow the standard set forth in Civ.R. 56(C). *Stegawski v. Cleveland Anesthesia Group, Inc.* (1987), 37 Ohio App.3d 78, 523 N.E.2d 902. Civ.R. 56(C) provides that summary judgment shall be rendered:

" * * * if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that * * * (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

■ "A motion for summary judgment forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial." *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus, citing *Celotex v. Catrett* (1986), 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265. Civ.R. 56(E) provides in part:

"When a motion for summary judgment is made *and supported as provided in this rule,* an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, *must set forth specific facts showing that there is a genuine issue for trial.*" (Emphasis added.)

"In reading section (C) in association with section (E), it can be readily seen that once a party moves for summary judgment and has supported his or her motion by sufficient and acceptable evidence, the party opposing the motion has a reciprocal burden to respond by affidavit or as provided in section (C) *setting forth specific facts* explaining that a genuine issue for trial exists." *Jackson v. Alert Fire & Safety Equip., Inc.* (1991), 58 Ohio St.3d 48, 51–52, 567 N.E.2d 1027, 1031.

■ In order to establish a cognizable claim of medical malpractice, a plaintiff must show the existence of a standard of care within the medical community, breach of that standard of care by the defendant/physician, and proximate cause between the medical negligence and the injury sustained. *Littleton v. Good Samaritan Hosp. & Health Ctr.* (1988), 39 Ohio St.3d 86, 529 N.E.2d 449; *Bruni*

*v. Tatsumi* (1976), 46 Ohio St.2d 127, 75 O.O.2d 184, 346 N.E.2d 673. In *Bruni, supra,* at 137, 75 O.O.2d at 190, 346 N.E.2d at 675, the Ohio Supreme Court stated:

"Proof of malpractice, in effect, requires two evidentiary steps: evidence as to the recognized standard of the medical community in the particular kind of case, and a showing that the physician in question negligently departed from this standard in his treatment of plaintiff."

The issue as to whether the physician or surgeon has proceeded in the treatment of a patient with the requisite standard of care and skill must ordinarily be determined from the testimony of experts. *Bruni, supra,* at 130, 75 O.O.2d at 186, 346 N.E.2d at 676; *Chupka v. Rigsby* (1991), 75 Ohio App.3d 795, 600 N.E.2d 832; *Buerger v. Ohio Dept. of Rehab. & Corr.* (1989), 64 Ohio App.3d 394, 581 N.E.2d 1114; *Johnson v. Hammond* (1988), 47 Ohio App.3d 125, 547 N.E.2d 1004. An exception to the rule requiring expert testimony exists when the lack of skill or care of the physician or surgeon is so apparent as to be within the comprehension of laymen and requires only common knowledge and experience to understand and judge it. *Bruni, supra; Buerger, supra; Johnson, supra.*

Moreover, the establishment of proximate cause must ordinarily be established through the testimony of a physician or other expert competent to testify. *Shumaker v. Oliver B. Cannon & Sons, Inc.* (1986), 28 Ohio St.3d 367, 28 OBR 429, 504 N.E.2d 44; *Lee v. Metrohealth Med. Ctr.* (May 13, 1993), Cuyahoga App. No. 62430, unreported, at 21, 1993 WL 158250. In *Shumaker,* the Ohio Supreme Court held at 369, 28 OBR at 430, 504 N.E.2d at 46:

"It is well-settled that the establishment of proximate cause through medical expert testimony must be by probability. At a minimum, the trier of fact must be provided with evidence that the injury was more likely than not caused by defendant's negligence. See *Cooper v. Sisters of Charity* (1971), 27 Ohio St.2d 242, 252 [56 O.O.2d 146, 151, 272 N.E.2d 97, 103]. Opinions expressed with a lesser degree of certainty must be excluded as speculative. [Fn. 3]"

At fn. 3, the court stated:

" 'Proof of possibility is not sufficient to establish a fact; probability is necessary. * * * ' *Drew v. Indus. Comm.* (1940), 136 Ohio St. 499, 501 [17 O.O. 113, 114, 26 N.E.2d 793, 794]; see, also, *Kuhn v. Banker* (1938), 133 Ohio St. 304, 312 [10 O.O. 373, 376, 13 N.E.2d 242, 245]. 'Probable is more than 50% of actual. * * * ' *Cooper, supra* [27 Ohio St.2d], at 253 [56 O.O.2d at 152, 272 N.E.2d at 104]. Evidence which only shows that a condition could have been the result of an injury is 'insufficient proof to warrant submission of the cause to the jury. * * * ' *Drew v. Indus. Comm., supra,* syllabus. See, also, *Drakulich v. Indus.*

*Comm.* (1940), 137 Ohio St. 82 [17 O.O. 398, 27 N.E.2d 932]; *Brandt v. Mansfield Rapid Transit, Inc.* (1950), 153 Ohio St. 429 [41 O.O. 428, 92 N.E.2d 1]; *Gedra v. Dallmer Co.* (1950), 153 Ohio St. 258 [41 O.O. 274, 91 N.E.2d 256]."

 In the present case, appellee attached an affidavit to his motion for summary judgment, in which he averred that he had reviewed the treatment rendered to Mrs. Rogoff and that it was his opinion that "[u]nder no circumstances was there any failure on my behalf to comply with the reasonable standard of dental care involving my consultation and treatment relative to Michelle B. Rogoff." Dr. King further opined, that "[i]n all respects, I have complied with the applicable standard for dentists practicing under the same or similar circumstances." In opposition to appellee's motion, appellants rely on the "expert medical report" and "supplemental expert medical report" of Dr. Robertson. However, appellants' expert medical reports fall woefully short of establishing a material issue of fact supporting their dental malpractice claim against appellee. First, appellants' unsworn expert medical reports are not "sufficient and acceptable" evidentiary materials as contemplated by Civ.R. 56(C) and (E). *Jackson, supra,* 58 Ohio St.3d at 51–52, 567 N.E.2d at 1031; *Vasas v. Univ. Hospitals of Cleveland* (Feb. 11, 1993), Cuyahoga App. No. 64129, unreported, at 9, 1993 WL 35633. The proper procedure for the introduction of evidentiary matter not specifically authorized by Civ.R. 56(C) is to incorporate the material by reference into a properly framed affidavit. *Martin v. Cent. Ohio Transit Auth.* (1990), 70 Ohio App.3d 83, 89, 590 N.E.2d 411, 415; *Biskupich v. Westbay Manor Nursing Home* (1986), 33 Ohio App.3d 220, 515 N.E.2d 632. In the present case, the above expert medical reports were not incorporated by reference into a properly framed affidavit.

 Second, Dr. Robertson's unsworn "reports" speak in terms of "possibilities" rather than "probabilities." Dr. Robertson's first "expert medical report" states that "there are five possible causes for concern," although he could not "say with certainty which, if any of these resulted in the prolonged pain experienced by the patient or the eventual loss of the tooth. Any one of the first four could have done so." Dr. Robertson later wrote, in his "supplement expert medical report," that the standards of care "may have been violated in this case" and that this "could * * * have resulted in the pain and/or subsequent loss of the tooth." Accordingly, appellants' expert medical reports fail to raise a material issue of fact supporting their dental malpractice claim against Dr. King.

 Appellant Michelle Rogoff also relies on an affidavit of her first trial counsel, which was attached to her complaint pursuant to R.C. 2305.11(B), stating generally that counsel had consulted with an expert prior to filing the instant cause of action and that the expert had determined there were reasonable

grounds for commencement of the lawsuit. Counsel's affidavit is based upon inadmissible hearsay evidence which fails to raise a genuine issue of fact for trial. A determination that there are reasonable grounds to commence a malpractice action hardly rises to the level of an opinion by an expert competent to testify that a defendant failed to provide the requisite standard of care appropriate for his field of specialty and that said failure to provide appropriate care was the direct and proximate cause, to a reasonable degree of certainty, of a plaintiff's injuries.

Finally, appellants argue that Mrs. Rogoff's own affidavit and deposition testimony raises a material issue of fact. Apparently, appellants contend that the lack of skill and care of Dr. King is so apparent as to be within the comprehension of laymen and requires only common knowledge and experience to understand and judge it. *Bruni, supra,* 46 Ohio St.2d at 130, 75 O.O.2d at 186, 346 N.E.2d at 676; *Buerger, supra,* 64 Ohio App.3d at 398, 581 N.E.2d at 1116; and *Johnson, supra,* 47 Ohio App.3d at 127, 547 N.E.2d at 1005. However, absent compelling evidence in the record tending to demonstrate a complete lack of care and skill on the professional's part, this court will not recognize an exception to the rule calling for an expert witness to establish a plaintiff's malpractice action.

Appellants also argue that the evidentiary materials attached to their motion for summary judgment raise a material issue of fact concerning Dr. King's credibility. We have already noted that appellants' materials fail to raise a material issue of fact on their own accord. Appellants' unsworn expert medical reports cannot be considered pursuant to Civ.R. 56(C) and (E) and, further, they fail to address the issues herein with the appropriate degree of certainty. Accordingly, appellants' expert medical reports likewise fail to impeach Dr. King's affidavit. Moreover, appellants' prior trial counsel's affidavit is inadmissible hearsay and also fails to address the issues herein with the appropriate degree of certainty. Finally, appellant Michelle Rogoff's own affidavit and deposition testimony cannot be used to impeach Dr. King's affidavit, since appellant, as a layperson, cannot render an opinion concerning the appropriate standard of care for dentists and proximate cause.

Appellants argue that the trial court prematurely considered appellee's motion for summary judgment. Appellants' only contention is that the trial court never issued a discovery cut-off date during the pendency of this litigation. However, a review of the record reveals that appellants were given more than an adequate time to conduct discovery and, in any event, failed to seek a continuance in order to obtain necessary evidentiary materials to reply to appellee's motion. On July 1, 1991, the trial court ordered appellants to file an expert report by September 13, 1991. At appellants' request, this deadline was extended to

October 14, 1991. Appellants' expert medical report was filed on October 15, 1991. On October 17, 1991, appellants were then given forty-five additional days to supplement their report. On December 6, 1991, appellants filed their supplemental report instanter. Moreover, appellee was given until January 1, 1992 to file a dispositive motion, while appellants were given until February 1, 1992 to respond. Appellee's motion was filed on January 30, 1992, with leave of court, while appellants filed their response, also with leave of court, on March 16, 1992. Finally, appellants failed to utilize Civ.R. 56(F) to seek a continuance in order to obtain the necessary discovery to oppose appellee's motion. *Tucker v. Webb Corp.* (1983), 4 Ohio St.3d 121, 4 OBR 367, 447 N.E.2d 100; *Whiteleather v. Yosowitz* (1983), 10 Ohio App.3d 272, 10 OBR 386, 461 N.E.2d 1331. Thus, a review of the record reveals that appellants were given more than adequate opportunity to oppose appellee's motion and further failed to seek a continuance to obtain the necessary evidence to oppose said motion.

In appellee's motion for summary judgment, appellee argued that appellants' cause of action for dental malpractice was barred by the statute of limitations, R.C. 2305.11(B)(1), and case law construing the same. See *Herr v. Robinson Mem. Hosp.* (1990), 49 Ohio St.3d 6, 550 N.E.2d 159; *Allenius v. Thomas* (1989), 42 Ohio St.3d 131, 538 N.E.2d 93; and *Hershberger v. Akron City Hosp.* (1987), 34 Ohio St.3d 1, 516 N.E.2d 204. Appellee argued that the "cognizable event" occurred late in 1987 when Mrs. Rogoff realized that her treatment with Dr. King did not solve her problem. Appellants, on the other hand, argue the "cognizable event" took place when Mrs. Rogoff was told by Dr. Tetelman that a broken instrument was left in her tooth. However, because this court has determined that appellants failed to raise a material issue of fact on their dental malpractice claim on the issues of standard of care and proximate cause, we decline to address the issue of whether appellants' claims are time-barred.

Appellants' first assignment of error is, therefore, overruled.

## II

In appellants' second assignment of error, appellants argue the trial court committed reversible error by not stating the grounds upon which it based its decision to grant appellee's motion for summary judgment. Appellants contend the trial court has placed an undue burden on appellants in prosecution of this appeal by failing to specifically identify the factual and legal issues which led it to render summary judgment on behalf of appellee.

The trial court issued the following final judgment:

"Motion for summary judgment on behalf of defendant King, D.D.S., filed 01/30/92, granted. Plaintiffs failed to present legally sufficient evidence to oppose defendant's motion for summary judgment. Final."

Civ.R. 54(A) provides:

" 'Judgment' as used in these rules includes a decree and any order from which an appeal lies as provided in R.C. 2505.02. A judgment shall not contain a recital of pleadings, the report of a referee or the record of prior proceedings."

Moreover, Civ.R. 58(A) provides:

"Subject to the provisions of Rule 54(B), upon a general verdict of a jury, upon a decision announced, or upon the determination of periodic payment plan, the court shall promptly cause the judgment to be prepared and, the court having signed it, the clerk shall thereupon enter it upon the journal. A judgment is effective only when entered by the clerk upon the journal."

Civ.R. 58(A) and R. 54(A) construed together require no more than a clear and concise pronouncement of the court's judgment. See, *e.g.*, *Brackmann Communications, Inc. v. Ritter* (1987), 38 Ohio App.3d 107, 526 N.E.2d 823. Moreover, Civ.R. 56 does not require any greater certitude in ruling on a motion for summary judgment. A more definitive statement concerning the court's rationale for granting a motion for summary judgment is simply not required by the Rules of Civil Procedure.

In *Tiefel v. Gilligan* (1974), 40 Ohio App.2d 491, 495, 69 O.O.2d 426, 428, 321 N.E.2d 247, 250, the Tenth District Court of Appeals found the following language to be in compliance with Civ.R. 58: "Summary judgment is, therefore, granted in favor of defendants at plaintiffs' cost." The language in the case *sub judice* is, in fact, more concise in that the lower court herein specifically wrote that appellants "failed to present legally sufficient evidence to oppose defendant's motion for summary judgment." The trial court's final judgment entry adequately provides this court with a sufficient pronouncement of its decision upon which to review the issues raised by appellants' appeal. Moreover, appellants can point to no specific controversy in the court's judgment entry which leads to an undue burden or hardship.

Finally, we note that Civ.R. 52 requiring the trial court to render findings of fact and conclusions of law specifically does not apply to motions brought pursuant to Civ.R. 12, 55 and 56.

Accordingly, appellants' second assignment of error is overruled.

*Judgment affirmed.*

JOHN F. CORRIGAN, P.J., and MATIA, J., concur.